J-S34002-15

2015 PA Super 147

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellee | |
| | |
| v. | |
| | |
| LARRY EUGENE RIGGLE, | |
| | |
| Appellant | No. 1112 MDA 2014 |

Appeal from the PCRA Order June 6, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001002-2008

BEFORE:  BOWES, OTT and STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED JULY 07, 2015**

Larry Eugene Riggle appeals *pro se* from the June 6, 2014 order denying him PCRA relief.  We affirm.

On April 29, 2009, a jury convicted Appellant of one count each of involuntary deviate sexual intercourse, aggravated indecent assault, and corruption of a minor, and four counts of indecent assault.  The victim was M.B., Appellant's thirteen-year-old nephew, who was sexually abused by Appellant from June 2007 to February 2008.  M.B. testified that Appellant, then forty-nine years old, performed oral sex on him on five occasions.  Appellant also penetrated his nephew's anus with his fingers at least five times and placed his penis inside the victim's anus once.  M.B. said that three dildos colored caramel, black, and purple were used during other

sexual assaults. Appellant also showed M.B. gay pornographic movies. Pursuant to a search warrant, police recovered the three described dildos and gay pornography from Appellant's residence.

Appellant did not admit to committing the crimes and maintained to police that M.B. knew about the sex toys and pornography from secretly going through Appellant's belongings. At trial, Appellant testified in his own defense, again denying that he sexually assaulted M.B. Appellant also presented character witnesses and the testimony of two relatives who lived with Appellant during the time frame of the assaults. The jury credited the Commonwealth's proof and convicted Appellant.

On August 7, 2009, Appellant was sentenced to eight to sixteen years incarceration followed by four years of probation. The sentence included a mandatory minimum term of five years incarceration for the crime of involuntary deviate sexual intercourse. 42 Pa.C.S. § 9718(a)(1)[1] ("A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows: . . . 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)—not less than ten years.").[2] On direct appeal, we affirmed,

_____

[1] This statute has been declared unconstitutional. **See Commonwealth v. Wolfe**, 106 A.3d 800 (Pa.Super. 2014) (Bowes, J., concurring).

[2] Effect January 1, 2007, § 9718 was amended so as to increase the mandatory minimum sentence from five years to ten years for involuntary

*(Footnote Continued Next Page)*

rejecting Appellant's challenges to the sufficiency and weight of the evidence. ***Commonwealth v. Riggle***, 31 A.3d 746 (Pa.Super. 2011) (unpublished memorandum). Our Supreme Court denied allowance of appeal on December 15, 2011. ***Commonwealth v. Riggle***, 34 A.3d 829 (Pa. 2011).

On December 18, 2012, Appellant filed a timely PCRA petition. He averred that trial counsel was ineffective for failing to: 1) call witnesses Richard Bower, Carol Henry, Jack Eoute and Raymone Kontz III; 2) cross-examine Denise Scott by rebutting her testimony that M.B. suffered from a central auditory processing disorder; 3) request the victim's medical records, which would have demonstrated that there was nothing physically wrong with M.B.; 4) object to the Commonwealth's failure to establish a specific date that he committed the offenses; and 5) object to the prosecutor's improper closing remarks.

Appellant completed witness certifications. Mr. Bower and Mr. Eoute purportedly would have testified that M.B.'s parents used Appellant's address to defraud the county, state, and federal governments of cash, food stamps, and medical care, and, after Appellant reported them to authorities, they encouraged M.B. to fabricate the charges in order to retaliate against

*(Footnote Continued)* ————————————
deviate intercourse when the victim was less than sixteen years old. P.L. 1567, No. 178, § 4 (enacted November 29, 2006). At sentencing, the parties were under the impression that the applicable mandatory minimum sentence remained five years. N.T. Sentencing, 8/7/09, at 14, 38.

- 3 -

Appellant. Appellant represented that Ms. Henry would have stated that, when she babysat M.B., he would rummage through her drawers and cupboards. Mr. Kontz allegedly would have informed the jury that M.B.'s parents and family "always lie." PCRA Petition, 12/18/12, at 6. Counsel was appointed but filed a petition to withdraw and a no-merit letter, as permitted by *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc* ).

The PCRA court found that none of Appellant's issues had merit, allowed counsel to withdraw, and sent notice of its intent to dismiss the PCRA petition without a hearing. In response to the notice, Appellant claimed that his sentence was illegal under *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

Appellant filed the present appeal from the June 6, 2014 order denying him PCRA relief. Appellant was ordered to file a statement of matters complained of on appeal.[3] Appellant raised seven issues therein: 1) his sentence is illegal under *Alleyne*; 2) trial counsel was ineffective for failing to object to various improper remarks that the prosecutor made during her closing; 3) trial counsel was ineffective for not presenting expert witnesses to contradict Denise Scott's expert testimony; 4) trial counsel was ineffective

_____

[3] We note that the trial court gave Appellant more than twenty-one days to file the statement and that the order notified Appellant that any issue not raised in the Pa.R.A.P. 1925(b) statement would be waived.

- 4 -

for not obtaining pre-trial discovery of the victim's medical records; 5) he is entitled to a new trial based upon prosecutorial misconduct; 6) PCRA counsel should not have been allowed to withdraw "where Appellant had meritorious issues concerning violation of his guaranteed and protected constitutional rights to a Jury trial, Fair trial, and the Due Process Clauses of the United States and Pennsylvania Constitution," Statement of Matters Complained of on Appeal, 8/5/14, at ¶ 6; and 7) his constitutional rights were violated because the Commonwealth did not specify the dates upon which the offenses occurred. While Appellant reserved the right to file a supplemental Pa.R.A.P. 1925(b) statement, none was filed.

On appeal, Appellant raises eight contentions:

I. Appellant's sentence is illegal under ***Alleyne v. United States***, 133 S.Ct. 2151(2013), because the trial court's application of 42 Pa.C.S.A. § 9718 to impose a mandatory minimum sentence violated Appellant's constitutional rights to a jury under the 6th amendment and the 14th amendments of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution and the due process clauses.

II. The PCRA court erred as a matter of law and constitution, when it dismissed Appellant's PCRA petition, where Appellant had meritorious issues that his trial counsel was constitutionally ineffective for failing to make a critical and valid objection to the prosecutor's closing remarks that (1) bolstered and vouched for witnesses: (2) unfairly characterized and stigmatized appellant's with epithets; (3) expressed her own personal beliefs by direct statements and indirect figure of speech as to the veracity of the witnesses: (4) engaged in conduct designed to arouse and inflame the passion of the jurors and prompt the jury to act out of sympathy for the victim; and (5) indicated that information which is not before the jury supports the witness testimony.

- 5 -

III. The PCRA court erred as a matter of law and constitution when it dismissed Appellant's PCRA petition, where appellant had meritorious issues that trial counsel was constitutionally ineffective for failing to present expert witness testimony to contradict Denise Scott a Commonwealth witness's testimony.

IV. The PCRA court erred as a matter of law and constitution when it dismissed Appellant's PCRA petition, where Appellant had meritorious issues that trial counsel was constitutionally ineffective for failing to investigate and request/ask for pretrial discovery concerning medical records of the victim.

V. The PCRA court erred as a matter of law and constitution when it dismissed appellant's PCRA petition, where Appellant had meritorious issues that the prosecutor committed prosecutorial misconduct.

VI. The PCRA court erred as a matter of law and constitution when it dismissed Appellant's PCRA petition where appellant had meritorious issues that he was denied his federal and state guaranteed and protected constitutional rights, because he was denied an opportunity to present a defense by Commonwealth and trial counsel, by the failure of the commonwealth to specify the date on which the alleged offense actually occurred.

VII. The PCRA court erred as a matter of law and constitution when it dismissed Appellant's PCRA petition where Appellant had raised meritorious issues that his trial counsel was ineffective for failing to investigate, interview, subpoena and call to testify critical witnesses for the defense whose testimony would have established Appellant's innocence.

VIII. The PCRA court erred as a matter of law and constitution when it accepted and allowed appointed PCRA counsel to file a "no merit letter" and withdraw where Appellant had and raised meritorious issues concerning an illegal sentence and violations of his guaranteed and protected constitutional rights to a jury trial, fair trial, compulsory process and due

process and equal protection and the due process clauses of the Pennsylvania and United States Constitutions.

Appellant's brief at i-ii.

Initially, we outline the applicable principles regarding our review of the PCRA court's determinations herein:

> An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

***Commonwealth v. Freeland***, 106 A.3d 768, 775 (Pa.Super. 2014) (citation omitted).

Appellant first maintains that his sentence is illegal under ***Alleyne***, **supra**. In ***Alleyne***, the Supreme Court held that the constitutional jury trial right requires any fact, other than a prior conviction, that triggers a mandatory minimum sentence to be proven beyond a reasonable doubt before the finder of fact. ***Alleyne*** is an application of the Court's prior pronouncement in ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), which ruled that any fact that increases a maximum sentence must be found by the factfinder beyond a reasonable doubt or admitted by the defendant during his guilty plea. In ***Alleyne***, the United States Supreme Court expressly overruled ***Harris v. United States***, 536 U.S. 545 (2002), which held that a fact that involves a mandatory minimum sentence does not implicate jury trial rights. ***Alleyne*** also implicitly abrogated ***McMillan v.***

*Pennsylvania*, 477 U.S. 79 (1986), which withstood an *Apprendi* attack in the *Harris* decision.

In *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (relying upon *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa.Super. 2013) (*en banc*)), we noted that *Alleyne* will be applied to cases pending on direct appeal when *Alleyne* was issued. Appellant seeks to apply *Newman's* ruling in this PCRA context and to afford *Alleyne* full retroactive effect based upon *Watley* and *Newman*, both of which were direct appeals.

Importantly, in *Watley*, this Court distinguished between applying *Alleyne* on direct appeal and on collateral review. We noted that a case may be retroactive on direct appeal, but not during collateral proceedings. *Watley*, *supra* at 117 n.5. Thus, while this Court has held that *Alleyne* applies retroactively on direct appeal, we have declined to construe that decision as applying retroactively to cases during PCRA review. *See Commonwealth v. Miller*, 102 A.3d 988 (Pa.Super. 2014).

In *Miller*, the PCRA petitioner attempted to utilize *Alleyne* as a timeliness exception to the PCRA's one-year time bar based on the retroactive new constitutional rule exception. Miller, however, had been sentenced to a mandatory minimum based on prior convictions for violent crimes and *Alleyne* itself held that it did not apply to prior convictions. *See Alleyne*, *supra* at 2160 n.1; *see also Watley*, *supra* at 117 n.3. Thus, *Alleyne* had no application to the petitioner therein. However, the *Miller*

panel discussed whether either the United Supreme Court or Pennsylvania Supreme Court held ***Alleyne*** retroactive. The ***Miller*** Court opined that because neither high court announced that ***Alleyne*** applied retroactively, that decision could not qualify as a timeliness exception even if applicable.

Since neither ***Watley*** nor ***Newman*** involved a PCRA petitioner, they are not dispositive as to whether ***Alleyne*** is fully retroactive and to be applied on collateral review. The seminal test in determining whether a constitutional rule warrants retroactive application during collateral review was delineated in ***Teague v. Lane***, 489 U.S. 288 (1989) (plurality), which was subsequently adopted by a majority of the Supreme Court. ***See Commonwealth v. Lesko***, 15 A.3d 345, 363 (Pa. 2011) (citing ***Butler v. McKellar***, 494 U.S. 407 (1990)). "Under the ***Teague*** framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." ***Whorton v. Bockting***, 549 U.S. 406, 416 (2007) (internal citations omitted).

While state courts are free to adopt more liberal standards in determining whether a decision is to be accorded full retroactivity, our Supreme Court has utilized the ***Teague*** test in examining retroactivity issues during state collateral review. ***Commonwealth v. Bracey***, 986 A.2d

128 (Pa. 2009); *Commonwealth v. Hughes*, 865 A.2d 761 (Pa. 2004) (discussing *Teague* and whether a new rule was a watershed procedural rule); *see also Commonwealth v. Cunningham*, 81 A.3d 1, 8 (Pa. 2013) ("This Court, however, generally has looked to the *Teague* doctrine in determining retroactivity of new federal constitutional rulings."). In *Cunningham*, the Court acknowledged that "this practice is subject to potential refinement" and "is not necessarily a natural model for retroactivity jurisprudence as applied at the state level." *Cunningham*, *supra* at 8. However, it ultimately applied the *Teague* formulation.

In *Teague*, the Supreme Court *sua sponte* addressed the issue of retroactivity and stated, "[r]etroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Teague*, *supra* at 300-01. The Court continued,

> It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. *See, e.g., Rock v. Arkansas*, 483 U.S. 44, 62, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987) (*per se* rule excluding all hypnotically refreshed testimony infringes impermissibly on a criminal defendant's right to testify on his behalf); *Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (Eighth Amendment prohibits the execution of prisoners who are insane). To put it differently, a case announces a new rule if the result was not

*dictated* by precedent existing at the time the defendant's conviction became final.

*Id*. at 301 (emphasis in original).

**Alleyne** undoubtedly is a new constitutional rule as it expressly overruled **Harris v. United States**, *supra*, which had reaffirmed the early 1986 decision in **McMillan v. Pennsylvania**, *supra.* The **Teague** Court explained that new constitutional rules "generally should not be applied retroactively to cases on collateral review." **Teague**, *supra* at 305-06. In **Penry v. Lynaugh**, 492 U.S. 302 (1989), *abrogated on other grounds by* **Atkins v. Virginia**, 536 U.S. 304 (2002), the Supreme Court more fully delineated the law governing retroactivity.

> In **Teague***,* we concluded that a new rule will not be applied retroactively to defendants on collateral review unless it falls within one of two exceptions. Under the first exception articulated by Justice Harlan, a new rule will be retroactive if it places "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" **Teague, supra***,* at 307, 109 S.Ct., at 1073 (quoting **Mackey***,* 401 U.S., at 692, 91 S.Ct., at 1179 (Harlan, J., concurring in judgments in part and dissenting in part)). Although **Teague** read this exception as focusing solely on new rules according constitutional protection to an actor's primary conduct, Justice Harlan did speak in terms of substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed. This Court subsequently held that the Eighth Amendment, as a substantive matter, prohibits imposing the death penalty on a certain class of defendants because of their status, **Ford v. Wainwright***, supra,* 477 U.S., at 410, 106 S.Ct., at 2602 (insanity), or because of the nature of their offense, **Coker v. Georgia***,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (rape) (plurality opinion). In our view, a new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing

certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty.

*Penry*, *supra* at 329-30; *see also Schriro v. Summerlin*, 542 U.S. 348, 352 n.4 (2004).

As noted, the United States Supreme Court has utilized a substantive and procedural rule dichotomy in analyzing retroactivity. Substantive rules are those that decriminalize conduct or prohibit punishment against a class of persons. *See Hughes*, *supra* at 781. Concomitantly, the Supreme Court has made clear that "rules that regulate only the **manner of determining** the defendant's culpability are procedural." *Schriro*, *supra* at 353 (citation omitted, emphasis in original). A constitutional criminal procedural rule will not apply retroactively unless it is a watershed rule that implicates the fundamental fairness and accuracy of the criminal proceeding.

A procedural rule is considered watershed if it is necessary to prevent an impermissibly large risk of an inaccurate conviction and alters the understanding of the bedrock procedural elements essential to the fairness of a proceeding. *See Whorton*, *supra* at 418. The only rule explicitly recognized by the United States Supreme Court as a watershed criminal procedural rule was announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963), *i.e.*, the right to counsel during a felony criminal prosecution. *Whorton*, *supra* at 419.

Instantly, the **Alleyne** ruling does not prohibit punishment for a class of offenders nor does it decriminalize conduct. Rather, **Alleyne** procedurally mandates the inclusion of facts in an indictment or information, which will increase a mandatory minimum sentence, and a determination by a fact-finder of those facts beyond a reasonable doubt. **Alleyne**, therefore, is not substantive. Nor does **Alleyne** constitute a watershed procedural rule. **See also United States v. Reyes**, 755 F.3d 210 (3rd Cir. 2014); **United States v. Redd**, 735 F.3d 88, 91–92 (2d Cir.2013); **In re Payne**, 733 F.3d at 1029–30; **In re Kemper**, 735 F.3d 211, 212 (5th Cir. 2013); **Simpson v. United States**, 721 F.3d 875 (7th Cir. 2013).

In this regard, the United States Supreme Court decision in **Schriro**, **supra**, and its discussion of **Ring v. Arizona**, 536 U.S. 584 (2002), is instructive. Preliminarily, **Ring** involved a successful **Apprendi** challenge to a death penalty statute. **Alleyne**, it should be remembered, relied on the **Apprendi** rationale. The High Court, in considering whether **Ring** applied retroactively, ruled that whether a judge or jury determined the facts essential to the increased punishment beyond a reasonable doubt was not material to the fundamental fairness or accuracy of capital sentencing. **See Schriro**, **supra**. Therefore, the distinction between whether a judge or jury determines the facts at issue does not result in the procedure announced in **Alleyne** being a watershed rule. Although submission to a jury of certain facts may lead to more acquittals of the now "aggravated crime," it does not

- 13 -

undermine the underlying conviction or sentence of the "lesser crime." This is because, in Pennsylvania, absent the jury finding the applicable facts, the defendant could receive the identical sentence for the "lesser crime." Hence, the fundamental fairness of the trial or sentencing is not seriously undermined, and **Alleyne** is not entitled to retroactive effect in this PCRA setting.

Appellant's second contention is that trial counsel was ineffective for failing to object to various statements made by the prosecutor during closing. Trial counsel "is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." **Freeland**, **supra** at 775 (citation omitted). There is a three-part test for proving counsel's ineffectiveness: "To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. **See Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973 (1987)." **Id**. (citation omitted). "Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." **Id**. (citation and emphasis omitted).

Appellant first suggests that the prosecutor mischaracterized the testimony of Lycoming County Detective William Weber. Detective Weber stated that he was involved in the investigation of the sexual assaults committed by Appellant and that he interviewed M.B. on February 21, 2008. Due to the hearsay rule, Detective Weber was not permitted to outline precisely what M.B. told him, but that witness indicated that M.B.'s accusations against Appellant resulted in the issuance of the search warrant for Appellant's home.

Appellant contends that remarks of District Attorney Melissa Kalaus were therefore improper since she maintained during her summation that M.B. "told Agent Weber that his Uncle Larry, the Defendant, when he was 13 put his penis in [M.B.'s] anus, put his finger in [M.B.'s] anus, stuck a dildo in [M.B.'s] anus. . . . not to forget, putting his mouth on [M.B.'s] penis." N.T. Closing, 4/29/09, at 25-26.

A prosecutor's remarks

constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

While it is improper for a prosecutor to offer any personal opinion as to guilt of the defendant or credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. In addition, the prosecutor must be allowed to respond to defense counsel's arguments, and any challenged statement must be viewed not in isolation, but in

- 15 -

the context in which it was offered. The prosecutor must be free to present his or her arguments with logical force and vigor." Within reasonable bounds, the prosecutor may employ oratorical flair and impassioned argument when commenting on the evidence . . . .

*Commonwealth v. Bryant*, 67 A.3d 716, 727-28 (Pa. 2013) (citations omitted).

In this case, Detective Weber initiated the investigation that led to the filing of the charges against Appellant based upon his interview with M.B. While Detective Weber, due to the hearsay rule, was not permitted to specifically delineate what M.B. said, the reasonable inferences from Detective Weber's testimony, coupled with that of M.B., was that M.B. reported to Detective Weber that Appellant committed the same conduct that M.B. outlined at trial. Hence, these remarks were based on reasonable inferences and deductions from the testimony of M.B. and Detective Weber. The argument was therefore not improper.

Appellant also lists an additional eleven remarks by Ms. Kalaus and maintains that they were inflammatory, unsupported by the evidence, or improperly expressed an opinion as to the veracity of a witness. We have reviewed the comments and conclude that they were supported by the evidence and did not indicate Ms. Kalaus' personal belief in a witnesses' credibility or Appellant's guilt. At one point, she did represent that M.B. was "credible and telling the truth." N.T. Closing Arguments, 4/29/09, at 36. However, that argument was a direct retort, and therefore fair response, to

defense counsel's closing argument that M.B. was a juvenile delinquent, had lied about other events, and also lied about the sexual assaults at issue herein. *Id*. at 2, 3, 4, and 5. Since none of the closing argument was improper, trial counsel was not ineffective for failing to object.

In his third issue, Appellant suggests that trial counsel was ineffective for failing to impeach Denise Scott. Ms. Scott's testimony was brief. She reported that M.B. had difficulties responding during verbal discussions. She explained that he required "a great deal of time in between questions to be able to process the thoughts and to be able to take in what is being presented to him." N.T. Trial, 4/28/09, at 18. Ms. Scott continued that M.B. thus did not respond to questions quickly. Trial counsel did not question the witness.

Appellant insists that counsel should have impeached Ms. Scott with contradictory expert testimony and should have required her to prove the veracity of her opinion. However, Ms. Scott's testimony was presented to explain why M.B. would be testifying in an unusual manner and was unrelated to Appellant's guilt or innocence. Additionally, Appellant proffers no actual evidence that her testimony was false nor is there any indication that she had any motive to lie about the fact that M.B. had difficulty with auditory processing. We thus conclude that Appellant has failed to make a sufficient showing that counsel could have conducted the proposed

impeachment and that trial counsel's failure to cross-examine this witness could have affected the outcome at trial.

Appellant's fourth position is that trial counsel should have investigated and presented hospital medical records of the victim in order to refute the Commonwealths' case "concerning the physical assault on the victim[.]" Appellant's brief at 23. Appellant fails to appreciate that there was no indication that M.B. was hospitalized or sought medical treatment for the sexual assaults. M.B. testified that Appellant performed oral sex on M.B.'s penis, digitally penetrated M.B.'s anus, and slightly penetrated M.B.'s anus with his penis. There is no apparent need for medical attention for these events, and Appellant fails to refer us to any place in the record wherein anyone stated that the victim did obtain medical treatment due to Appellant's activities. Hence, we cannot find trial counsel ineffective for failing to investigate and obtain the victim's medical records.

Appellant's fifth position, which is that prosecutorial misconduct occurred, is identical to his second allegation. Appellant's brief at 24 ("Appellant avers that he is herein incorporating issues II, on pages 15 to 20." We reject that position on the grounds specified *supra*.

Appellant's sixth averment is that trial counsel should have objected to the lack of specificity regarding the dates that the offenses were committed. He claims that he could not defend against the charges since the dates of the offenses set forth in the indictment, from June 2007 to February 2008,

were too vague. Initially, we disagree with the position that Appellant could not defend against the charges. Appellant presented testimony from two witnesses, Antonio and Penny Selinas. They related to the jury that, except for one week, they lived with Appellant from June 10, 2007 through January 6, 2008 and that he could not have perpetrated the crimes outlined by M.B. since they both were home most of the time.

Furthermore, the applicable law is that:

It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty." **Commonwealth v. Jette**, 818 A.2d 533, 535 (Pa.Super. 2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. **Commonwealth v. Gibbons**, 567 Pa. 24, 784 A.2d 776 (2001).

However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. **Commonwealth v. Devlin**, 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975). . . . Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. **See** Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

**Commonwealth v. Koehler**, 914 A.2d 427, 436 (Pa.Super. 2006). Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." **Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 990 (Pa.Super. 2007) (quoting **Commonwealth v. Groff**, 378

Pa.Super. 353, 548 A.2d 1237, 1242 (1988)). This is especially true when the case involves sexual offenses against a child victim. ***Id.***

In this case, there was an ongoing pattern of sexual abuse. M.B. reported that Appellant committed oral sex upon him five times and digitally penetrated his anus on numerous occasions. Appellant also placed his penis and a dildo slightly inside the victim's anus and showed him pornography. M.B. also said that there were times that he used a dildo on Appellant. Thus, the eight-month period outlined in the indictment was not too vague. ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984 (Pa.Super. 2007) (Commonwealth accused defendant of abusing victim during seven-month period).

In his seventh claim, Appellant avers that trial counsel should have presented Mr. Bower, Ms. Henry, Mr. Euote and Mr. Kontz as witnesses. This issue is waived as it was not contained in Appellant's Pa.R.A.P. 1925(b) statement. ***Commonwealth v. Garland***, 63 A.3d 339, 342 (Pa.Super. 2013) (finding one of appellant's claims "waived since Appellant failed to present the specific issue in his court-ordered Pa.R.A.P. 1925(b) statement.").

Appellant's final position is that PCRA counsel was ineffective for not litigating the meritorious ***Alleyne*** claim. As we have found that Appellant is not entitled to relief under ***Alleyne***, PCRA counsel was not ineffective for failing to advance it during the PCRA proceeding.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015