2016 PA Super 149

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN JOSEPH CICCONE, | |
| Appellant | No. 3114 EDA 2014 |

Appeal from the PCRA Order Entered October 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003231-2011

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, AND STABILE, JJ.

OPINION BY BENDER, P.J.E.: **FILED JULY 12, 2016**

Appellant, Sean Ciccone, appeals from the post-conviction court's October 7, 2014 order denying his timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The sole question before this Court is: whether Appellant is entitled to relief when he raises, in a timely PCRA petition, a claim that his sentence is illegal pursuant to **Alleyne v. United States**, 133 S.Ct. 2151 (2013), and **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*). After careful review, we conclude that relief is warranted.

On September 2, 2011, Appellant pled guilty to two felony charges under the Controlled Substance, Drug, Device and Cosmetic Act; specifically, Appellant pled guilty to two violations of 35 P.S. § 780-113(a)(30) ("Except as authorized by this act, the manufacture, delivery, or possession with

intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."). Appellant also pled guilty to conspiracy to commit these offenses, 18 Pa.C.S. § 903, as well as to one count of possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Appellant's plea stemmed from his and his co-conspirator's possession of more than 50 marijuana plants.[1]

At Appellant's plea hearing, the Commonwealth invoked the three-year mandatory minimum sentence prescribed by 18 Pa.C.S. § 7508(a)(1)(ii). N.T., 9/9/11, at 2-3. At the time of Appellant's sentencing, that provision provided that:

> (1) A person who is convicted of violating section 13(a)(14), (30) or (37) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act,1 where the controlled substance is marijuana shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:
>
> …
>
> (ii) when the amount of marijuana involved is at least ten pounds, but less than 50 pounds, or at least 21 live plants but less than 51 live plants; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; …

---

[1] The collective weight of the plants, discovered in Appellant's and his co-conspirator's home, totaled 13 pounds. N.T., 9/9/11, at 5. Police also discovered indicia of distribution, including bins for drying and packaging marijuana, 'owe' sheets, and multiple firearms. *Id.* Additionally, Appellant admitted that he both grew and sold marijuana. *Id.*

18 Pa.C.S. § 7508(a)(1)(ii).

Pursuant to Appellant's negotiated plea agreement, and in compliance with Section 7508(a)(1)(ii), the trial court sentenced Appellant to 3½-5 years' (42-60 months') incarceration, and to a fine of $15,000. N.T., 9/9/11, at 10-11. Appellant did not file any post-sentence motions or a direct appeal. Accordingly, his conviction became 'final' on October 10, 2011.[2]

On April 9, 2012, Appellant filed a timely, *pro se* PCRA petition, alleging, *inter alia*, the ineffectiveness of his trial counsel. The PCRA court appointed counsel to represent him, and evidentiary hearings were conducted in April and June of 2014. However, none of those matters are before us today. As is pertinent to the instant appeal, Appellant subsequently filed a counseled, amended PCRA petition on June 18, 2014, alleging that his sentence is unconstitutional and, therefore, illegal pursuant to **Alleyne**. **See** Amended Motion for Post Conviction Collateral Relief, 6/18/14, at 1. The trial court denied Appellant's PCRA petition on October 7, 2014. Appellant filed a timely appeal, and a timely, court-order Pa.R.A.P. 1925(b) statement. The PCRA court issued its Rule 1925(a) opinion on December 23, 2014.

---

[2] "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, *or at the expiration of time for seeking the review*." 42 Pa.C.S. § 9545(b)(3) (emphasis added). "If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence…." Pa.R.Crim.P. 720(a)(3).

Appellant filed a timely brief on April 6, 2015, and the Commonwealth filed its brief on May 6, 2015. On October, 26, 2015, this Court issued an order, *sua sponte*, certifying this case for *en banc* review, along with several other cases raising identical questions. Order, 10/26/15, at 1. The order directed Appellant and the Commonwealth to address the following question: "Whether the PCRA petitioner is entitled to relief when he raises, in a timely PCRA petition, a claim that his sentence is illegal pursuant to **Alleyne v. United States**, 133 S.Ct. 2151 (2013), and **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*)?" **Id.** Pursuant to that Order, Appellant filed a supplemental brief on November 16, 2015, and the Commonwealth filed a substituted brief on December 7, 2015. Oral argument was conducted on this issue on February 23, 2016.[3] This matter constitutes Appellant's only claim for relief.

*** 

We now endeavor to answer the question certified for *en banc* review in this case. We begin with the applicable standard and scope of review.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. **Commonwealth v. Burkett**, 5 A.3d 1260, 1267 (Pa. Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. **Id.** We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. **Id.** This Court may affirm a PCRA court's decision

---

[3] Appellant's counsel did not appear at oral argument, as he submitted this matter for consideration on the briefs. However, oral argument was presented by counsel for other similarly situated appellants and the respective District Attorneys.

> on any grounds if the record supports it. ***Id.*** Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011). However, we afford no such deference to its legal conclusions. ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 442 (2011); ***Commonwealth v. Reaves***, 592 Pa. 134, 923 A.2d 1119, 1124 (2007). Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary. ***Commonwealth v. Colavita***, 606 Pa. 1, 993 A.2d 874, 886 (2010).

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

Instantly, our decision concerns only questions of law. Thus, our "standard of review is *de novo* and our scope of review plenary." ***Id.***

In order to properly assess the scope and nature of the issue at hand, a summary of the important developments in ***Alleyne***-related Pennsylvania case law is in order. In ***Alleyne***, the Supreme Court of the United States held that facts that give rise to mandatory minimum sentences (aside from prior convictions) must be proven to a jury beyond a reasonable doubt. ***Alleyne*** was itself an extension of the principle announced in ***Apprendi v. New Jersey***, 530 U.S. 466 (2000) (holding that any fact that increases penalty for crime beyond prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to jury, and proven beyond reasonable doubt). However, prior to ***Alleyne***, Pennsylvania courts routinely upheld ***Apprendi***-based challenges to mandatory minimum sentences in Pennsylvania. ***See e.g. Commonwealth v. Nguyen***, 834 A.2d 1205, 1208 (Pa. Super. 2003) ("Appellate case law has routinely held that the sentencing trigger is not an element of the offense but rather only a

factor that does not improperly deny the jury the right to make relevant factual determinations.").

*Alleyne* has proved to be cataclysmic to Pennsylvania's common statutory scheme for imposing mandatory minimum sentences. As this Court first acknowledged in *Commonwealth v. Watley*, 81 A.3d 108 (Pa. Super. 2013), "[t]he *Alleyne* decision … renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard." *Id.* at 117. Importantly, the *Watley* Court also recognized that *Alleyne* "necessarily implicated Pennsylvania's legality of sentencing construct" and, as such, *Alleyne*-based claims "are not waivable and may be raised *sua sponte* by this Court." *Id.* at 117-18.

In *Watley*, the defendant was subjected to a mandatory minimum sentence based on his possession of a firearm during the commission of a violation of 35 P.S. § 780-113(a)(30) (pertaining to "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance"). *See* 42 Pa.C.S. § 9712.1 (held unconstitutional in *Newman*). The *Watley* Court conducted, *sua sponte*, an *ad hoc* *Alleyne* analysis, ultimately concluding that the appellant's sentence did not violate *Alleyne* because "the jury's finding on the two firearms charges … directly aligned with the [mandatory sentencing provision's] requirement … that the defendant possess a gun[.]" *Watley*, 81 A.3d at 120-21.

Subsequently, in **Commonwealth v. Thompson**, 93 A.3d 478 (Pa. Super. 2014), this Court vacated, *sua sponte*, a mandatory minimum sentence imposed pursuant to 18 Pa.C.S. § 7508 (Drug trafficking sentencing and penalties) as unconstitutional under **Alleyne**.  Contrary to the result in **Watley**, the **Thompson** court found it was "apparent from the record that the facts that permitted application of that mandatory sentence were not determined by the fact-finder nor proven beyond a reasonable doubt."  **Thompson**, 93 A.3d at 493.  Implicit in the **Thompson** decision was the suggestion that application of Section 7508 would run afoul of **Alleyne** in all but the rarest of circumstances, such as in **Watley**, where the facts triggering the mandatory sentence at issue had been proven *vis a vis* the elements of a simultaneous conviction.

Case-by-case analyses of **Alleyne** issues, as conducted in **Watley** and **Thompson**, were short-lived.  In **Newman**, an *en banc* panel of this Court held that **Alleyne** rendered the mandatory sentencing statute at issue in **Watley** unconstitutional in its entirety.  Notably, the **Newman** Court considered, but ultimately rejected, the Commonwealth's argument that the **Alleyne**-offending provision[4] (hereinafter "proof at sentencing provision") of Section 9712.1 was severable from the statute as a whole.

---

[4] Subsection (c) of Section 9712.1 read as follows:

> **(c) Proof at sentencing.--**Provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.  The

The proof at sentencing provision at issue in **Newman** proved to be the Achilles heel of nearly all of Pennsylvania's mandatory minimum sentencing statutes. Mandatory minimum sentences set forth in 42 Pa.C.S. §§ 9712 and 9713 were held unconstitutional in **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014) (applying **Newman** and **Alleyne**).[5] In **Commonwealth v. Fennell**, 105 A.3d 13 (Pa. Super. 2014),

---

applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S. § 9712.1(c). As recognized by the **Watley** Court, this provision clearly violated **Alleyne** in several respects.

[5] Interestingly, in **Valentine**, the trial court had sought to circumvent the **Alleyne**-violating proof at sentencing provision set forth in those statutes by placing the mandatory sentence triggering facts on the verdict slip, and instructing the jury "to determine beyond a reasonable doubt whether" those facts had been proven by the Commonwealth. **Valentine**, 101 A.3d at 811. The **Valentine** Court rejected this approach, reasoning:

By asking the jury to determine whether the factual prerequisites set forth in § 9712(a) and § 9713(a) had been met, the trial court effectively determined that the unconstitutional provisions of § 9712(c) and § 9713(c) were severable. Our decision in **Newman**[,] however[,] holds that the unconstitutional provisions of § 9712(c) and § 9713(c) are not severable but "essentially and inseparably connected" and that the statutes are therefore unconstitutional as a whole. …

Moreover, **Newman** makes clear that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**." **Newman**[, 99 A.3d] at 102. Therefore, the trial court lacked the authority to allow the jury to determine the factual predicates of §§ 9712 and 9713. [**Id.**] at 102–03 (recognizing

- 8 -

*appeal denied*, 121 A.3d 494 (Pa. 2015), we granted relief based on Section 7508's unconstitutionality, despite the fact that the defendant had stipulated to the facts which triggered the mandatory minimum sentence. The *Fennell* Court saw

> no meaningful difference, for the purposes of *Newman* and *Valentine*[,] between submitting the element to the jury and accepting a stipulation from a defendant. They both have the purpose of finding a method to impose a mandatory minimum sentence outside the statutory framework, but consistent with *Alleyne*. However, both *Newman* and *Valentine* unequivocally state that creating a new procedure in an effort to impose a mandatory minimum sentence is solely within the province of the legislature.

*Fennell*, 105 A.3d at 20. Thus, *Newman* and *Valentine* not only stand for the proposition that Pennsylvania's typical mandatory minimum sentencing statutes are unconstitutional in light of *Alleyne*, but they reject, as violative of separation of powers principles, any attempts to impose those mandatory sentences by means that conceptually adhere to the dictates of *Alleyne*, but which circumvent the unconstitutional statutory schemes that codify those penalties. This theory also served to render unconstitutional several other mandatory minimum sentences. *See Commonwealth v. Bizzel*, 107 A.3d 102, 103 (Pa. Super. 2014), *appeal denied*, 126 A.3d 1281 (Pa. 2015) (holding 18 Pa.C.S. § 6317 (Drug-free school zones) unconstitutional in light

---

> that several trial courts of this Commonwealth have found Section 9712.1 as a whole to be no longer workable without legislative guidance).

*Valentine*, 101 A.3d at 812.

of **Newman** and **Valentine**); **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), *appeal granted*, 121 A.3d 433 (Pa. 2015) (holding 42 Pa.C.S. § 9718 (Sentences for offenses against infant persons) unconstitutional in light of **Newman** and **Valentine**); **but see Commonwealth v. Reid**, 117 A.3d 777, 784 (Pa. Super. 2015) (rejecting an **Alleyne**-based challenge to 42 Pa.C.S. § 9714(a), which also contains a version of the problematic proof at sentencing provision, because "**Alleyne** did not overturn prior precedent that prior convictions are sentencing factors and not elements of offenses").

Our Supreme Court ultimately endorsed the **Newman**/**Valentine** approach in **Commonwealth v. Hopkins**, 117 A.3d 247 (Pa. 2015). In considering the constitutionality of 18 Pa.C.S. § 6317, and in particular the argument that the **Alleyne**-offending proof of sentencing provision was severable from that statute, our Supreme Court stated:

> [W]e hold … that numerous provisions of Section 6317 are constitutionally infirm under **Alleyne**. Moreover, the remaining provisions of Section 6317, standing alone, are incomplete and are incapable of being vindicated in accord with the intent of the General Assembly. 1 Pa.C.S. § 1925. Because of the significant provisions found to violate the Constitution, which clearly express the intent of the legislature that Section 6317 is a mandatory minimum sentencing statute, and not a substantive offense, we find the remaining unoffending provisions of Section 6317 are incapable of being severed, and we will not judicially usurp the legislative function and rewrite Section 6317 or create a substantive offense which the General Assembly clearly did not desire. Rather, we leave it to our sister branch for an appropriate statutory response to the United States Supreme Court's decision in **Alleyne**.

**Hopkins**, 117 A.3d at 262. No such response has yet arrived.

- 10 -

The separation of powers theory was not the only basis on which this Court has rejected attempts to circumvent the statutory scheme by reliance on defense stipulations to facts which trigger mandatory minimum sentences. Another basis to reject the stipulation argument arose in **Commonwealth v. Vargas**, 108 A.3d 858 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015), a case which involved a defendant's stipulation to a weight of heroin that triggered a mandatory minimum sentence under Section 7508. The Majority opinion in **Vargas** dutifully applied the rationale of the **Fennell** decision, *supra*, to reject the theory that the defendant's pre-**Alleyne** stipulation could ever satisfy **Alleyne** by circumventing the unconstitutional aspects of Section 7508's proof at sentencing provision. However, in Part II of P.J.E. Bender's concurring and dissenting opinion in **Vargas**, which was joined by a majority of the **Vargas** Court *en banc* panel judges, this Court also ruled it was "a grave injustice" to consider a pre-**Alleyne** stipulation as having demonstrated proof beyond a reasonable doubt of such facts when "such pre-**Alleyne** stipulations only had the practical effect of conceding that the Commonwealth could prove the weight of the drugs by a preponderance of the evidence at sentencing." **Vargas**, 108 A.3d at 882 (P.J.E. Bender concurring and dissenting).[6]

---

[6] P.J.E. Bender's concurring and dissenting opinion was joined outright by Judges Donahue and Lazarus, and Part II of his opinion was joined by P.J.E. Ford Elliot in the second footnote of her concurring statement; P.J.E. Ford Elliot's concurring statement was joined, in turn, by Judges Panella, Donahue, and Lazarus. Thus, a majority of this Court agreed with the

Notably, **Alleyne**, and its Pennsylvania progeny, most importantly **Newman**, were routinely raised *sua sponte* by this Court, and/or addressed despite a defendant's failure (or inability) to raise the claim in the lower court, to invalidate sentences under the auspices of Pennsylvania's legality of sentencing construct.  As we recognized in **Watley**:

> Ordinarily, new rulings pertaining to cases on direct appeal are entitled to retroactive effect so long as the applicable issue is preserved.  **Commonwealth v. Lofton**, 57 A.3d 1270, 1276 (Pa. Super. 2012).  Appellant did not preserve any challenge to his mandatory minimum sentence, his jury trial rights, or the constitutionality of § 9712.1, likely because similar challenges had been rejected based on prior United States Supreme Court decisions.  The constitutionality of a statute can be waived.  **See Commonwealth v. Hartz**, 367 Pa.Super. 267, 532 A.2d 1139, 1142–1143 (1987) (*en banc*) (Cirillo, P.J. concurring) (collecting cases); **see also Commonwealth v. Bavusa**, 574 Pa. 620, 832 A.2d 1042 (2003); **Commonwealth v. Wallace**, 368 Pa.Super. 255, 533 A.2d 1051 (1987).
>
> Nonetheless, while we are cognizant that **Alleyne** was a Sixth Amendment jury trial rights case, it necessarily implicated Pennsylvania's legality of sentencing construct since it held that it is improper to sentence a person to a mandatory minimum sentence absent a jury's finding of facts that support the mandatory sentence.  Application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits.  **See Commonwealth v. Foster**, 960 A.2d 160 (Pa. Super. 2008), *affirmed*, 609 Pa. 502, 17 A.3d 332 (2011) (OAJC); [**Commonwealth v.**] **Hopkins**, [67 A.3d 817,] 821 [(Pa. Super. 2013)]. Legality of sentence questions are not waivable and may be raised *sua sponte* by this

---

reasoning set forth in Part II of P.J.E. Bender's concurring and dissenting opinion as presenting additional grounds upon which to reject the argument that pre-**Alleyne** stipulations to mandatory sentencing triggering facts could satisfy **Alleyne**, independent of the unconstitutionality of Section 7508 and the derivative separation of powers issue articulated in **Newman**, **Valentine**, and **Hopkins**.

>Court. *See Hopkins*, *supra*; *Commonwealth v. Infante*, 63 A.3d 358 (Pa. Super. 2013).

*Watley*, 81 A.3d at 117-18 (footnotes omitted).

Needless to say, *Alleyne* has wreaked havoc on mandatory minimum sentencing in Pennsylvania, given that the unconstitutional proof at sentencing provision common to most mandatory sentencing statutes is neither severable nor subject to circumvention. *See Newman*; *Valentine*; *Vargas*. Today, we confront yet another wave of claims that arise in *Alleyne*'s wake, of which the current case is fairly representative. Appellant was sentenced to a mandatory minimum sentence pursuant to a statute rendered unconstitutional in light of *Alleyne*, 18 Pa.C.S. § 7508. However, *Alleyne* was not decided until after Appellant filed his timely PCRA petition and, as such, Appellant's conviction had become 'final' by the time *Alleyne* was issued. *See* footnote 2, *supra*. Relatedly, Section 7508 was not deemed unconstitutional until *Fennell*. The question, therefore, remains: is Appellant, and those similarly situated, entitled to have his illegal sentence vacated via a timely PCRA petition, despite the finality of his conviction?

Recently, in *Commonwealth v. Riggle*, 119 A.3d 1058 (Pa. Super. 2015), a panel of this Court decided that such petitioners are not entitled to relief. In that case, the appellant was sentenced to a mandatory minimum sentence under 42 Pa.C.S. § 9718. After an unsuccessful direct appeal, the appellant filed a timely PCRA petition on December 18, 2012, six months' prior to the decision in *Alleyne*, raising multiple ineffective assistance of counsel claims. PCRA counsel was appointed but ultimately filed a petition

to withdraw and a no-merit letter.  Subsequently, "[t]he PCRA court found that none of [the a]ppellant's issues had merit, allowed counsel to withdraw, and sent notice of its intent to dismiss the PCRA petition without a hearing. In response to the notice, [the a]ppellant claimed that his sentence was illegal under **Alleyne**[]."  **Riggle**, 119 A.3d at 1062.  The appellant renewed that claim, *inter alia*, in his subsequent appeal from the denial of his PCRA petition.

The **Riggle** Court acknowledged that the appellant's sentence was illegal under **Alleyne**, but held that he wasn't entitled to retroactive application of that decision, or **Newman**, on collateral review.  In reaching that conclusion, the **Riggle** Court applied the retroactivity analysis set forth in **Teague v. Lane**, 489 U.S. 288 (1989) (plurality), which our own Supreme Court has utilized in considering the retroactive effect of new United States Supreme Court cases in collateral proceedings.  **See e.g. Commonwealth v. Blystone**, 725 A.2d 1197, 1203 (Pa. 1999) (considering the retroactive effect of **Morgan v. Illinois**, 504 U.S. 719 (1992) (holding that during *voir dire* for a capital offense, a state trial court may not refuse inquiry into whether a potential juror would automatically impose the death penalty)).  "Under the **Teague** framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.  A new rule applies retroactively in a [federal] collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure' implicating the fundamental fairness

and accuracy of the criminal proceeding." ***Whorton v. Bockting***, 549 U.S. 406, 416 (2007) (internal citations omitted).

> Using the ***Teague*** framework, the ***Riggle*** Court held:
>
> [T]he ***Alleyne*** ruling does not prohibit punishment for a class of offenders nor does it decriminalize conduct. Rather, ***Alleyne*** procedurally mandates the inclusion of facts in an indictment or information, which will increase a mandatory minimum sentence, and a determination by a factfinder of those facts beyond a reasonable doubt. ***Alleyne***, therefore, is not substantive. Nor does ***Alleyne*** constitute a watershed procedural rule.

***Riggle***, 119 A.3d at 1067.

The ***Riggle*** Court appears to have narrowly considered ***Alleyne*** under ***Teague*** without due consideration of the unique and profound impact ***Alleyne*** has had in Pennsylvania. As documented above, Pennsylvania's common mandatory minimum sentencing scheme has been eviscerated by ***Alleyne***, particularly in light of the ***Newman*** line of decisions. Thus, even if ***Alleyne*** is not a new substantive rule as the ***Riggle*** Court concluded, it is not clear from the ***Riggle*** Court's analysis why ***Alleyne***, in light of ***Newman*** and its progeny, is not, or has not resulted in, a watershed procedural change in Pennsylvania.[7]

---

[7] The ***Riggle*** Court's limited "watershed procedural rule" analysis contains some obvious defects resulting from its framing of the issue without consideration of that case's distinctive effects on Pennsylvania law. In rejecting ***Alleyne*** as constituting a watershed procedural rule, the ***Riggle*** Court relied on a pre-***Alleyne*** case, ***Schriro v. Summerlin***, 542 U.S. 348 (2004),

> and its discussion of ***Ring v. Arizona***, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)…. Preliminarily, ***Ring*** involved a successful ***Apprendi*** challenge to a death penalty statute. ***Alleyne***, it should be remembered, relied on the ***Apprendi***

Nevertheless, whether the **Riggle** Court's retroactivity analysis under

**Teague** is correct is not dispositive of our decision in this case. There is an

---

rationale. The High Court, in considering whether **Ring** applied retroactively, ruled that whether a judge or jury determined the facts essential to the increased punishment beyond a reasonable doubt was not material to the fundamental fairness or accuracy of capital sentencing. **See Schriro**, **supra**. Therefore, the distinction between whether a judge or jury determines the facts at issue does not result in the procedure announced in **Alleyne** being a watershed rule. Although submission to a jury of certain facts may lead to more acquittals of the now "aggravated crime," it does not undermine the underlying conviction or sentence of the "lesser crime." This is because, in Pennsylvania, absent the jury finding the applicable facts, the defendant could receive the identical sentence for the "lesser crime." Hence, the fundamental fairness of the trial or sentencing is not seriously undermined, and **Alleyne** is not entitled to retroactive effect in this PCRA setting.

**Riggle**, 119 A.3d at 1067. This analysis ignores issues related to the consensus reached by this Court in Part II of P.J.E. Bender's concurring and dissenting opinion in **Vargas**, discussed *supra*. **See** Footnote 6. Under the pre-**Alleyne** framework, defendants may have conceded or stipulated to mandatory minimum triggering facts because, at that time, such facts were subject only to a preponderance of the evidence standard, a relatively easy burden for the Commonwealth to overcome when compared to the beyond a reasonable doubt standard. The **Riggle** Court states that this does not "*seriously* undermine[]" the fairness of pre-**Alleyne** sentencing proceedings, a carefully measured statement that exposes a tacit admission that at least some degree of unfairness is evident. **Riggle**, 119 A.3d at 1067 (emphasis added). Moreover, to say that a defendant "could" receive an identical sentence for a lesser crime also disregards the practical reality that, even in the absence a mandatory sentencing scheme, judges could have reasonably exercised their discretion to use the same mandatory triggering facts to justify more severe sentences. Clearly, the fundamental fairness of pre-**Alleyne** sentencing proceedings in Pennsylvania are implicated by **Alleyne**, because Pennsylvania's now-unconstitutional approach to mandatory minimum sentences had previously dictated not just sentencing procedures, but also practical elements of criminal trial practice and strategy.

- 16 -

applicable state-based remedy to Appellant's illegal sentence that does not require a finding of retroactivity under **Teague**. It must be acknowledged that

> the **Teague** rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings. It was intended to limit the authority of federal courts to overturn state convictions—*not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions*.

**Danforth v. Minnesota**, 552 U.S. 264, 280-81 (2008) (emphasis added). Thus, **Teague** dictates whether a decision must be applied retroactively as a federal constitutional matter. It does not purport to be the last word on whether other remedies exist under Pennsylvania law for the correction of illegal sentences. Indeed, as **Danforth** suggests, when **Teague** does not demand retroactive application of new constitutional rules, Pennsylvania is still free to provide a remedy above and beyond what is provided by federal constitutional jurisprudence. And it does.

A Pennsylvania state court's authority to grant relief on collateral review is dictated by the PCRA statute. **See** 42 Pa.C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect …."). Moreover, the PCRA statute expressly states that it "provides for an action by which persons convicted of crimes they did not commit *and persons serving illegal sentences* may obtain collateral relief." **Id.** (emphasis added).

Notably, Section 9542 does not delineate between sentences which were illegal when issued and sentences which became illegal at a later time. Indeed, the use of the term "serving" suggests that no such distinction was intended. This is not to say that the legislature did not contemplate retroactivity concerns; certainly, the legislature contemplated the retroactive effect of newly recognized constitutional rights when setting forth the criteria for consideration of untimely PCRA petitions. **See** 42 Pa.C.S. § 9545(b)(1)(iii) (permitting consideration of an untimely PCRA petition where "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively"). Indeed, it is precisely because the PCRA statute specifically addresses retroactivity concerns with regard to untimely PCRA petitions that its failure to address the matter with regard to timely PCRA petitions strongly suggests that the legislature was open to providing a remedy in situations such as the one before this Court today.

Here, Appellant's sentence was the result of the application of an unconstitutional statute. **See Fennell**, **supra**. It is axiomatic that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." **Commonwealth v. Leverette**, 911 A.2d 998, 1001 (Pa. Super. 2006). Furthermore, "an unconstitutional statute is ineffective for any purpose, … '[i]t is as if it were never enacted.'" **Glen-Gery Corp. v. Zoning Hearing Bd. of Dover Twp.**, 907 A.2d 1033, 1043

(Pa. 2006) (internal citations omitted). Moreover, our Supreme Court has stated that "[t]rial courts *never* relinquish their jurisdiction to correct an illegal sentence." *Commonwealth v. Vasquez*, 744 A.2d 1280, 1284 (Pa. 2000) (emphasis added).

There is no doubt that the mandatory minimum sentence statute in question, 18 Pa.C.S. § 7508, was unconstitutional when it was applied to Appellant. *See Glen-Gery Corp*., 907 A.2d at 1037-39 (discussing the *ab initio* doctrine and its origins in *Marbury v. Madison*, 5 U.S. 137 (1803)). *Alleyne* did not serve to amend the United States Constitution. *Alleyne* merely recognized what had been previously unrecognized, or which had been previously overlooked or misapprehended: that the Sixth Amendment of the United States Constitution provides a defendant with the right to have any facts that increase the mandatory minimum sentence to which he or she is exposed be determined by a jury beyond a reasonable doubt. Thus, Section 7508, through its proof at sentencing provision, routinely caused Pennsylvania Courts to violate defendants' Sixth Amendment rights until its unconstitutionality was finally recognized.

Nevertheless, whether illegal when issued, or rendered illegal as a result of intervening authorities, it should be undisputed that Appellant is currently "serving" an illegal sentence. Pennsylvania case law emphatically supports the proposition that illegal sentences must be corrected by Pennsylvania Courts when jurisdiction is not in doubt, and the PCRA statute explicitly states that it exists to provide a remedy for illegal sentences,

without any retroactivity qualifications in the context of *timely* PCRA petitions.

The Commonwealth argues that **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013), prohibits relief in this matter.[8] We disagree. In **Cunningham**, our Supreme Court concluded, erroneously, that the 'new' constitutional rule announced in **Miller v. Alabama**, 132 S.Ct. 2455 (2012) (holding that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment), was a new procedural rule, not a new substantive constitutional rule entitled to retroactive effect under **Teague**. Not only has the holding in **Cunningham** been effectively overruled,[9] that case also did not speak directly to whether the express terms of the PCRA statute permit the correction of illegal sentences in timely-filed PCRA petitions. Instead, the **Cunningham** decision only sought to answer whether retroactive application of **Miller** was *required* under **Teague**, as the Court expressed in characterizing the claim under consideration.[10] Simply put, the matter

---

[8] The Commonwealth's Brief misidentifies this case as "**Commonwealth v. Campbell**," Commonwealth's Brief at 10-11, but otherwise provides citations to **Cunningham**.

[9] In **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016), the United States Supreme Court held that **Miller** constituted a new substantive constitutional rule that was entitled to retroactive effect under **Teague**. Thus, **Montgomery** effectively overruled the holding in **Cunningham**.

[10] The **Cunningham** Court stated/characterized the appellant's claim as follows:

before us was not before the Court in **Cunningham** and, therefore, that case cannot be read to prohibit a remedy it never considered.

The statute under which Appellant was sentenced has been held to be unconstitutional in its entirety; thus, Appellant is currently serving an illegal sentence. Because Appellant filed a timely PCRA petition, this Court has jurisdiction to correct that illegal sentence, as did the PCRA court below. Accordingly, we hold that when an unconstitutional mandatory minimum sentencing statute results in an illegal sentence, that illegal sentence can be corrected via a *timely* PCRA petition, irrespective of whether retroactive application of the underlying constitutional ruling is *required* under the

---

> It is [the a]ppellant's position that the holding in **Miller** applies retroactively to prisoners, such as [a]ppellant, serving mandatory life-without-parole sentences for crimes committed as juveniles, even where they have exhausted their direct appeal rights and are proceeding under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546. According to [the a]ppellant, the United States Supreme Court unambiguously sanctioned retroactive application in **Miller**, since it reversed the order of a state appellate court affirming the dismissal of a post-conviction petition in the **Jackson** case. **See Miller**, ––– U.S. at ––––, 132 S.Ct. at 2475. In this respect, [the a]ppellant invokes the admonishment that, "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." **Teague**[.]

**Cunningham**, 81 A.3d at 5. Clearly, the issue before the court in **Cunningham** was whether federal retroactivity principles, as delineated in **Teague**, required retroactive application of **Miller**, not whether independent state grounds permit the correction of illegal sentences pursuant Pennsylvania's illegal sentencing construct and the statutory authority of the PCRA.

***Teague*** framework.[11]   Thus, we reverse the PCRA court's denial of Appellant's PCRA petition and remand for resentencing.  To the extent that ***Riggle*** can be read to prohibit this specific form of relief, it is hereby overruled.

Order ***reversed***.   Case ***remanded*** for resentencing.   Jurisdiction ***relinquished***.

President Judge Emeritus Ford Elliott and Judges Shogan, Lazarus and Ott join this opinion.

Judge Mundy files a concurring opinion in which Judge Lazarus joins.

Judge Bowes files a dissenting opinion in which Judges Olson and Stabile join.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2016

---

[11] We emphasize that our decision does not imply that retroactivity concerns are immaterial to issues raised in timely PCRA petitions.  To the contrary, our decision is limited exclusively to illegal sentencing claims, as they fall explicitly within the scope of the PCRA statute with regard to timely-filed PCRA petitions, and because of our coexisting case law permitting the correction of illegal sentences at any time by a court that possesses jurisdiction to do so.  The ***Teague*** analysis remains the primary framework for determining whether new constitutional decisions, which do not specifically implicate the legality of a sentence, apply retroactively on collateral review.