**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Gary E. PRISK, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 2010.

Filed Jan. 28, 2011.

---

Casey M. McClain, Public Defender, Bellefonte, for appellant.

Yvette L. Wilson, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: STEVENS, GANTMAN, and FITZGERALD *, JJ.

OPINION BY GANTMAN, J.:

Appellant, Gary E. Prisk, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his jury trial convictions for three hundred fourteen (314) offenses, including multiple counts of rape, involuntary deviate sexual intercourse, and indecent assault.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. Between 2001 and 2007, Appellant sexually abused his stepdaughter ("Victim"). The abuse commenced when Victim was ten years old. At that time, Appellant would force Victim to undress in his presence. Appellant threatened to kill Victim's family members if she told anyone about these incidents.

As Victim grew older, the abuse escalated. Appellant forced Victim to perform mutual masturbation and to give and receive oral sex. Appellant also gave Victim a camera, ordering her to take nude photographs of herself in sexually explicit poses. When Victim was approximately twelve years old, Appellant raped her for the first time. On that occasion, Appellant plied Victim with alcohol and made her watch pornographic videos. Appellant told Victim she would have to perform the sex acts depicted in the videos. Thereafter, Appellant continued to rape and sexually assault Victim on an almost daily basis, often when Victim's mother and brother were not at home. If Victim disobeyed Appellant's commands, Appellant would physically abuse her. The physical abuse included burning Victim's stomach, holding her head under water in the bathtub, and placing plastic bags over her head.

In 2006, Appellant was imprisoned at the Centre County Correctional Facility for unrelated offenses. Appellant participated in a work release program, which enabled him to continue his abuse of Victim. In 2007, when Appellant no longer participated in work release, Victim first informed her mother and the police about the abuse. As part of the investigation into Victim's allegations, the police convinced Victim to visit Appellant at the county prison on March 11, 2008. Victim wore a recording device during the visit, capturing her conversation with Appellant. The Commonwealth did not obtain an order from the Court of Common Pleas prior to intercepting this conversation.

On July 7, 2008, the Commonwealth filed criminal informations charging Appellant with three hundred fourteen separate offenses related to the sexual and physical

---

* Former Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 3121, 3123, 3126 respectively.

abuse of Victim. On November 3, 2008, Appellant filed a motion to suppress the recording of his jailhouse conversation with Victim. Appellant claimed the Commonwealth obtained the recording in violation of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act").[2] Specifically, Appellant argued the Commonwealth had to obtain an order from the Court of Common Pleas prior to intercepting a conversation inside of his "home." By order and opinion entered January 16, 2009, the court denied Appellant's suppression motion.

Following trial, a jury convicted Appellant of all charges. On April 9, 2010, the court sentenced Appellant to an aggregate term of six hundred thirty-three (633) to one thousand five hundred (1500) years' imprisonment. On April 14, 2010, Appellant timely filed post-sentence motions, including a motion to modify sentence. Appellant conceded his sentence fell within the statutory guidelines; nevertheless, Appellant argued the court imposed a manifestly excessive sentence. Appellant insisted he "will never live even a fraction of the total sentence," and the sentence "goes far beyond the bounds of protecting the community...." (Post–Sentence Motions, filed 4/14/10, at 5). On May 13, 2010, the court denied Appellant's post-sentence motions.

Appellant timely filed the instant notice of appeal on May 19, 2010. On June 2, 2010, the court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule 1925(b) statement on June 14, 2010.

Appellant raises two issues for our review:

DID THE COURT ERR BY FAILING TO SUPPRESS AN INTERCEPTED CONVERSATION WITHIN THE WALLS OF THE PRISON IN WHICH APPELLANT RESIDED?

WAS THE COURT'S AGGREGATE SENTENCE OF 633 YEARS TO 1500 YEARS' INCARCERATION A MANIFESTLY EXCESSIVE SENTENCE?

(Appellant's Brief at 27).

In his first issue, Appellant complains the Commonwealth cannot record a conversation in the home of a nonconsenting party unless the Court of Common Pleas first issues an order authorizing the interception. Appellant contends the county prison was his "home" at the time of the March 11, 2008 interception, because it was his *de facto* place of abode. Appellant asserts he has lived at the prison since 2006, and has paid $10.00 per day in fees to "rent" his cell. Appellant also maintains he has the ability to restrict visitors' access to the prison; a visitation could occur only after Appellant places the visitor's name on a list for approval.

Additionally, Appellant maintains the prison does not record or otherwise monitor the conversations occurring inside the visitation room. Appellant emphasizes that prison officials monitor some types of inmate communications, including telephone conversations, but not others, such as outgoing mail. Under these circumstances, Appellant argues he had a subjective belief that his conversation in the visitation room was private. Appellant further argues: "If there are distinctions being made in what [inmate] communications are being monitored, society is tacitly recognizing a very limited expectation of privacy as reasonable." (Appellant's Brief at 40). Appellant concludes the court should have suppressed the recording of the March 11, 2008 conversation in

**2.** 18 Pa.C.S.A. § 5701 *et seq.*

the prison visitation room on this ground. We disagree.

■■■ We examine this issue subject to the following principles:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26–27 (Pa.Super.2008) (*en banc*) (internal citations and quotation marks omitted).

"The focus and purpose of the [Wiretap Act] is the protection of privacy." *Commonwealth v. Spence*, 428 Pa.Super. 548, 631 A.2d 666, 668 (1993). The Wiretap Act provides in pertinent part:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire,

electronic or oral communications), where:

\* \* \*

(iv) the requirements of this subparagraph are met. If an oral interception otherwise authorized under this paragraph will take place in the home of a nonconsenting party, then, in addition to the requirements of subparagraph (ii), the interception shall not be conducted until an order is first obtained from the president judge, or his designee who shall also be a judge, of a court of common pleas, authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order. No such order or affidavit shall be required where probable cause and exigent circumstances exist. For the purposes of this paragraph, an oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of the interception.

18 Pa.C.S.A. § 5704(2)(iv). The Wiretap Act defines "home" as: "The residence of a nonconsenting party to an interception, provided that access to the residence is not generally permitted to members of the public and the party has a reasonable expectation of privacy in the residence under the circumstances." 18 Pa.C.S.A. § 5702.

■■ "[T]he [Wiretap] Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion will not be electronically recorded." *Commonwealth v. Brion*, 539 Pa. 256, 259–60, 652 A.2d 287, 288 (1994). "However, this expectation must be justifiable under the existing cir-

cumstances. Implicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy." *Id.* at 260, 652 A.2d at 288.

▐ "To determine whether one's activities fall within the right of privacy, we must examine: first, whether [the defendant] has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable." *Id.* at 260, 652 A.2d at 288–89. "To satisfy the first requirement, the individual must demonstrate that he sought to preserve something as private. To satisfy the second, the individual's expectation of privacy must be justifiable under the circumstances." *Commonwealth v. Moore,* 928 A.2d 1092, 1098 (Pa.Super.2007).

> In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Id.* (quoting *Commonwealth v. Viall,* 890 A.2d 419, 422 (Pa.Super.2005)).

Instantly, at the suppression hearing, the Commonwealth presented Lieutenant Jeanna Ananea of the Centre County Correctional Facility. Lieutenant Ananea testified regarding the policies and procedures governing the prison visitation room where Appellant met with Victim. According to the testimony, the prison contains ten visitation rooms for the use of two hundred thirty-six (236) inmates. Each visitation room can accommodate up to three separate visits at one time. The visitation room contains three seats for inmates and three seats for visitors; the inmates' seats are separated from the visitors' seats by a glass partition, and inmates speak with their visitors through a closed-circuit telephone system.

Inmates do not have unlimited access to the visitation room, and their visitation privileges can be revoked. Inmates are permitted to have one visit per week, as well as one "special" visit per month. (*See* N.T. Suppression Hearing, 12/4/08, at 5.) "Central Control" opens the door to the visitation room, allowing inmates to enter when they have a scheduled visit. (*Id.* at 4). Inmates must schedule visits twenty-four hours in advance, and visitors must provide photo identification to the visitation officer upon arrival. Food and other contraband are not permitted in the visitation room.

Additionally, the visitation rooms are not part of the housing unit the inmates inhabit. The housing unit includes the inmates' cells. The cells contain beds, toilets, desks, mirrors, and sinks. Inmates keep their personal items, such as clothes and tooth brushes, inside the cells.

Consequently, the suppression court concluded Appellant did not have a reasonable expectation of privacy during his conversation in the visitation room:

> [Appellant] does not have ready access to the visitation room. He does not control when he comes and goes, and what he can do when in the visitation room is restricted. For instance, he cannot consume food, drink, or alcohol. Furthermore, access is controlled by the prison, and permission must be granted for [Appellant] to use the visitation room. [Appellant] does not have free access to his visitors. All visitors must be listed on an approval list ahead of time and [Appellant] can only remain in the visitation room for a limited time.

There also may be up to three (3) individual inmates having visitations in the same room at one time.

\* \* \*

For the foregoing reasons, it unreasonable for an inmate to expect privacy in his conversations in the visitation room. [Appellant] did not have a reasonable expectation of privacy during his meeting with the complaining witness. Furthermore, such an expectation of privacy is not one society is prepared to recognize. While society and our Courts have recognized a certain level of privacy for inmates, the expectation posited by [Appellant] is not within that level.

(Suppression Court Opinion, filed January 16, 2009, at 5–6). In light of the applicable scope and standard of review, we accept this conclusion. Under these circumstances, any general expectation of privacy in Appellant's prison visitation room conversations was unreasonable. Thus, the court properly denied Appellant's suppression motion. *See Williams, supra.*

■ In his second issue, Appellant asserts his aggregate sentence is manifestly excessive and unreasonable, because the court imposed consecutive sentences for some of his convictions. Appellant concedes this Court "is cautious to cede that a substantial question has been raised when challenging consecutive sentence structures." (Appellant's Brief at 42). Appellant contends, however, the sentencing court failed to recognize the absurdity of the aggregate sentence imposed. Based on his current life expectancy, Appellant argues his minimum sentence is roughly twelve times longer than necessary for the court to have effectively imposed a life sentence. Additionally, Appellant emphasizes he is not challenging his sentence for the purpose of leniency. Rather, he contends his convictions for multiple offenses still required the court to utilize a sound

rationale and develop an "appropriate" sentence. Appellant concludes this Court must vacate his sentence and remand the matter for re-sentencing. Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Mastromarino,* 2 A.3d 581 (Pa.Super.2010) (explaining allegation of excessiveness due to imposition of consecutive sentences implicates discretionary aspects of sentencing).

■ Challenges to the discretionary aspects of sentencing do not guarantee an appeal as of right. *Commonwealth v. Sierra,* 752 A.2d 910, 912 (Pa.Super.2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa. R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans,* 901 A.2d 528, 533 (Pa.Super.2006), appeal denied, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

■ When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. Pa.R.A.P. 2119(f); *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002). The concise

statement must indicate "where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." *Commonwealth v. Kiesel*, 854 A.2d 530, 532 (Pa.Super.2004) (quoting *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa.Super.2000), *appeal denied*, 563 Pa. 672, 759 A.2d 920 (2000)).

 The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825 (Pa.Super.2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

 Generally, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Pass*, 914 A.2d 442, 446–47 (Pa.Super.2006). *See also Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995) (stating appellant is not entitled to "volume discount" for his crimes by having all sentences run concurrently). *But see Commonwealth v. Dodge*, 957 A.2d 1198 (Pa.Super.2008), *appeal denied*, 602 Pa. 662, 980 A.2d 605 (2009) (holding consecutive, standard range sentences on thirty-seven counts of **theft-related offenses** for aggregate sentence of 58½ to 124 years' imprisonment constituted virtual life sentence and, thus, was so manifestly excessive as to raise substantial question). "Thus, in our view, the key to resolving the preliminary substantial question inquiry is

whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Mastromarino, supra* at 587.

Instantly, Appellant properly preserved his sentencing issue in a timely filed post-sentence motion and included a Rule 2119(f) statement in his appellate brief. Although a substantial question appears to exist on the surface, we must emphasize that the jury found Appellant guilty of three hundred and fourteen (314) separate offenses. These offenses stemmed from Appellant's systematic sexual abuse of his stepdaughter, which occurred on an almost daily basis over the course of six years. Further, the court did not impose consecutive sentences for every count. At the same time, Appellant was not entitled to a "volume discount" for his multiple offenses. *See Hoag, supra.* Based upon the foregoing, we will not deem the aggregate sentence as excessive in light of the violent criminal conduct at issue. *See Mastromarino, supra.* Therefore, Appellant's challenge to the imposition of the consecutive sentences as excessive merits no relief. *See Pass, supra.* Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Justice FITZGERALD files a Concurring and Dissenting Statement.

CONCURRING AND DISSENTING Statement by FITZGERALD, J.:

I agree with the majority's disposition on the wiretap issue. However, I respectfully dissent from the majority on the sentencing issue, as I would find that Appellant's aggregate sentence of 633 to 1,500 years' imprisonment is manifestly excessive. I would find that Appellant has raised a substantial question in arguing

that his sentence is inconsistent with the objectives of the Sentencing Code. Section 9721(b) of the Sentencing Code, General Standards, provides that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). I would find that the trial court could have achieved the policies of section 9721(b) without imposing a minimum sentence that is more than six times a person's natural lifetime, which I find is manifestly excessive and clearly unreasonable. *See* 42 Pa.C.S. § 9781(c)(2).