J-A26044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                                  :
             v.                     :
                                  :
                                  :
MATTHEW S. PERRY           :
                                  :
            Appellant        :   No. 551 WDA 2023

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000323-2020

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:              **FILED: November 12, 2025**

Appellant, Matthew S. Perry, appeals from the judgment of sentence entered in the Greene County Court of Common Pleas, following his jury trial conviction for over 2,000 counts of rape, involuntary deviate sexual intercourse ("IDSI"), aggravated indecent assault, incest, corruption of minors, and indecent assault.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. M.P., a minor child, lived at home with her father Appellant, her mother Cheyenna Perry, and several brothers.  A.C.,[2] M.P.'s best friend, frequently slept over M.P.'s house.  When A.C. and M.P. were in the fifth grade together,

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(a)(7), 4302(b), 6301(a)(ii), and 3126(a)(7), respectively.

[2] A.C. was a minor at the time of the offenses and at the time of trial. Accordingly, we use her initials in order to protect her privacy.

A.C. reported to Kristin Rice, a counselor and social worker employed by the elementary school, that Appellant had sexually assaulted her at M.P.'s house. A.C. later reported to Ms. Rice that Appellant had also inappropriately touched M.P.

On April 5, 2017, Ms. Rice filed a ChildLine report on behalf of M.P. That same day, Melissa Ewart, a Children & Youth Services ("CYS") caseworker, went to Appellant's home. Thereafter, Ms. Ewart instituted a safety plan which provided that the children were not to be left alone with Appellant. Ms. Ewart returned to the household "a handful of times" after the initial encounter. (N.T. Trial, 11/18/22, at 59). M.P. did not initially disclose the abuse to Ms. Ewart and even denied the abuse at first, which Ms. Ewart noted was "not uncommon." (*See id.* at 62-63).

On May 18, 2017, Corporal Joseph Popielarchek of the Pennsylvania State Police obtained and executed a search warrant for Appellant's residence. He seized 14 items, including a Nikon camera. While officers searched the premises, Appellant returned home, saw the police cars parked in the driveway, and fled.

On June 1, 2017, Desirea Patterson-Watson, a child advocate employed by A Child's Place, conducted a forensic interview with M.P. Although reluctant to speak at first, over the course of the interview, M.P. related several incidents of abuse by Appellant. In summary, M.P. stated that: Appellant had rubbed her rear end underneath her clothes when she was four or five years old; Appellant put his "thing" in her "cooch" when she was approximately ten

- 2 -

years old; Appellant frequently requested that she perform "blow jobs," the most recent of which occurred when M.P. was eleven years old; Appellant sometimes inserted one or two fingers inside of M.P.; Appellant called her his little toy; when M.P. was nine or ten years old, Appellant had her watch pornographic videos on his computer; and Appellant took pictures of M.P. "doing poses" when she was five years old. (**See** Commonwealth's Ex. 1, at 17:30 – 29:20, 34:28 – 35:58). M.P. also confirmed that she had disclosed the abuse to A.C. (**See id.** at 30:15).

Dr. Karen Morris, a pediatrician employed by A Child's Place, performed a forensic examination of M.P. on June 2, 2017. Dr. Morris determined that M.P. was prepubertal, and that she had a fimbriated hymen, with deep notches at 7:00 and 9:00. These notches were "suspicious for past penetration" but were not necessarily diagnostic of past sexual penetration, as injuries to a child's hymen can heal within two weeks. (N.T. 11/17/22, at 55). During the examination, M.P. disclosed to Dr. Morris that she had suffered a past injury to her private part.

In October 2020, police arrested Appellant and the Commonwealth charged him with a litany of sexual offenses, stemming from his near-daily sexual assaults of M.P. from the time she was five years old until she was around 12½ years old.[3]

On November 7, 2022, the Commonwealth filed notice seeking a hearing

---

[3] The Commonwealth later charged Appellant with an additional incident that occurred when M.P. was three years old.

to admit several interviews that had been conducted with M.P., pursuant to the tender years exception. On November 8, 2022, the parties appeared before the court to mark exhibits for the purpose of *in camera* review. On November 10, 2022, the court held a hearing and subsequently issued an order finding that several of the interviews the Commonwealth sought to introduce were more prejudicial than probative; thus, the court excluded those interviews. Nevertheless, the court admitted the June 2017 forensic interview conducted by Ms. Patterson-Watson, finding that it was relevant, had indicia of reliability, and was conducted very close to the alleged events.

On November 16, 2022, the matter proceeded to trial. The Commonwealth presented the testimony of Ms. Patterson-Watson, Corporal Joseph Popielarchek, Dr. Karen Morris, A.C., Mrs. Perry, M.P.,[4] Melissa Ewart, and Michelle Daff. Appellant testified in his defense.

M.P. testified that Appellant began sexually abusing her when she was three or four years old. The first time, Appellant called her into the living room, turned her around, covered her mouth, and digitally penetrated her. The incident caused "intense pain." (N.T. 11/17/22, at 162-63). M.P. stated that she was approximately five or six years old when Appellant tied her to a bed and raped her. M.P. testified that she felt as if she had been "broken" and that there was so much blood that Appellant had to wash the blanket.

---

[4] Following Appellant's arrest, the parental rights of both Appellant and Mrs. Perry were terminated. M.P. has since been adopted and her name legally changed.

- 4 -

(*See id.* at 165-66). After the initial rape, it "happened often." (*See id.* at 169). M.P. also testified that Appellant frequently requested that she perform oral sex on him or took pornographic photographs of her.

These incidents happened "pretty often," "every day, sometimes a couple times a day," so often that it became a routine. (*See id.* at 171, 175). Appellant seized opportunities alone to abuse M.P. and sometimes raped her before leaving for school. M.P. later clarified that she performed oral sex on Appellant every day from the time she was five until she was 12½ years old. M.P. estimated that approximately 60% of the instances of abuse involved forced oral sex and the remaining 40% of the instances of abuse involved vaginal rapes.

M.P. recalled that the only days she did not remember abuse occurring were on Easter Sunday, or her birthday, because there were many family members present and M.P. was the center of attention. (*See id.* at 182). If M.P. tried to deny Appellant's requests or get away from him, he would physically abuse her. Appellant told M.P. that if anyone found out, he would go to jail, and "you don't want your dad to go to jail, do you?" (*See id.* at 181).

M.P. testified that her mother discovered the abuse on two separate occasions. On one occasion, Appellant told M.P. that Mrs. Perry had found footage of the abuse and told M.P. to deny it. Although M.P. initially denied being abused, she testified that she later informed her mother it was Appellant in the pictures. M.P. did not disclose the other instances of abuse. However,

Mrs. Perry did not divorce Appellant or otherwise take any action to prevent the abuse. The sexual abuse continued until A.C. disclosed to Ms. Rice, "everything came out," and M.P. was removed from the home. (*See id.* at 174, 185).

Mrs. Perry testified that she was married to Appellant and M.P. was their daughter. She knew A.C. as M.P.'s best friend who would occasionally stay the night at their house. She was employed as a nursing assistant and frequently worked long and sporadic hours, while Appellant was unemployed and provided childcare.

In 2012, Mrs. Perry discovered child sexual abuse material on Appellant's Nikon camera. The images depicted seven-year-old M.P. performing oral sex on Appellant, in the children's toy room, and naked in Appellant's lap with Appellant's penis in between her thighs. Mrs. Perry confronted Appellant and threw the camera at him. Appellant denied the accusations and deleted the pictures from the camera. Mrs. Perry asked M.P. if "it was him," and M.P. said yes. (N.T. 11/17/22, at 139-40). While Mrs. Perry threatened to divorce Appellant at this time, she ultimately did not divorce him.

Mrs. Perry admitted to telling police officers that M.P. had denied that Appellant touched her. However, at trial, she also admitted that this statement was not true and that M.P. had not made such a denial. Further, Mrs. Perry admitted that she was currently serving a prison sentence after pleading guilty to taking sexually explicit photographs of M.P. in July 2017.

Additionally, Mrs. Perry described at least one occasion in 2017 when Appellant discarded a bag of CD-ROMs in a dumpster.

A.C. testified that when she and M.P. were around ten or eleven years old, M.P. confided that Appellant was molesting her. In addition to the disclosure, A.C. observed Appellant touch M.P. on her breasts, vagina, and rear, with her clothes on and off. On another occasion, A.C. was in the bathroom and heard Appellant order M.P. to perform oral sex on him. When A.C. left the bathroom, she observed M.P. performing oral sex on Appellant until A.C. told her to stop. A.C. also observed Appellant taking sexually explicit pictures of M.P. with a red and black camera "two or three times." (N.T. Trial, 11/16/22, at 135-36). A.C. testified that she personally observed approximately a dozen instances of abuse.

Appellant testified in his own defense. He denied assaulting M.P.

On November 18, 2022, following trial, the jury returned a guilty verdict on all counts. Specifically, the jury convicted Appellant of 2,190 counts of rape, 2,190 counts of IDSI, 2,191 counts of aggravated indecent assault, 2,190 counts of incest of a minor, 2,191 counts of corruption of a minor, and 2,191 counts of indecent assault.

On March 28, 2023, the court sentenced Appellant to an aggregate sentence of 1,500 to 3,000 years of incarceration,[5] consecutive to an

_____

[5] Specifically, Appellant received consecutive sentences of 15 to 30 years' imprisonment for the first 100 counts of rape of a child. He received a
*(Footnote Continued Next Page)*

additional sentence Appellant was already serving.[6]

On April 10, 2023, Appellant filed a post-sentence motion, arguing that the verdict was not supported by sufficient evidence and was against the weight of the evidence, and that his sentence was excessive and contrary to due process of law. On April 14, 2023, the court denied Appellant's motion.

On May 15, 2023, Appellant timely filed a notice of appeal. On September 7, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On September 26, 2023, Appellant timely complied.

On appeal, Appellant raises the following issues for review:

> 1. Did the Commonwealth present sufficient evidence to support any or all of [Appellant's] convictions?

---

sentence of 15 to 30 years' imprisonment for each count of the remaining 2,090 counts of rape of a child, to run concurrently to each other and the preceding counts. The 2,190 IDSI counts merged with the rape counts. The first 2,190 counts of aggravated indecent assault merged with the rape counts; the remaining count of aggravated indecent assault received a sentence of 5 to 10 years' imprisonment, to run concurrently with the sentence for the rapes. Appellant received a sentence of 1 to 2 years' imprisonment on each of the 2,190 counts of incest, with each count running concurrent to each other and to the rapes. The first 2,190 counts of corruption of minors merged with the rape counts, and on the remaining count, Appellant received a sentence of 1 to 2 years' imprisonment, to run concurrent to the rest of his sentence. Finally, the first 2,190 counts of indecent assault merged with the rape counts, and the remaining count received a concurrent sentence of 1 to 2 years' imprisonment, concurrent with Appellant's other sentences.

[6] Appellant received a sentence of 40 to 80 years for rape and related offenses involving another child at docket No. CP-30-CR-0000239-2018.

2. Did the trial court err in denying a motion for new trial wherein it was asserted that there was not sufficient weight to establish convictions for the following convictions;

    a.)    2,190 counts of rape;

    b.)    2,190 counts of involuntary deviate sexual intercourse with a child;

    c.)    2,191 counts of aggravated indecent assault;

    d.)    2,190 counts of incest with a minor;

    e.)    2,191 counts of corruption of minors; and

    f.)    2,191 counts of indecent assault;

3. Did the trial court err in permitting the jury to hear the forensic interview in that it fell within the tender years exception and was not unfairly prejudicial to [Appellant]?

[4]. Did the trial court err in abusing its discretion in sentencing [Appellant] to 1,500 to 3,000 years of imprisonment?

(Appellant's Brief at 13).

In Appellant's first issue, he challenges the sufficiency of the evidence to support his convictions. Rather than arguing that the Commonwealth failed to meet specific elements of each offense, Appellant's claim centers on his assertion that there was no evidence to support a guilty verdict beyond a reasonable doubt on the thousands of charges against him. Although Appellant admits that the Commonwealth is not required to establish the exact date and time of each offense, he insists that it is not relieved from all efforts to establish a defined time frame from when the crimes charged occurred.

According to Appellant, the Commonwealth incorrectly estimated the number of counts based upon M.P.'s testimony that the assaults had occurred one or two times a day for a period of more than six years. Appellant complains that the Commonwealth failed to indicate what offense occurred on which day, which is particularly important where each charge has separate elements that do not necessarily overlap. Appellant further contends that M.P. testified only that the abuse occurred "every day" but did not indicate the nature of the abuse, and that there were days when she was not abused, thereby rendering the Commonwealth's estimations erroneous. Appellant concludes that the evidence was insufficient to sustain his convictions, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where

the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Sebolka**, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting **Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Pennsylvania Crimes Code defines the offenses for which Appellant was convicted, in relevant part, as follows:[7]

**§ 3121.  Rape**

\* \* \*

**(c) Rape of a child.--**A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3121(c).

**§ 3123.  Involuntary deviate sexual intercourse**

---

[7] The Crimes Code additionally defines "sexual intercourse" as "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required."  **See** 18 Pa.C.S.A. § 3101.  The Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  **See id.**  The Crimes Code defines "deviate sexual intercourse" as "[s]exual intercourse per os or per anus between human beings….  The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures."  **See id.**

* * *

**(b) Involuntary deviate sexual intercourse with a child.--**A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3123(b).

**§ 3125. Aggravated indecent assault**

**(a) Offenses defined.--**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

* * *

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3125(a)(7).

**§ 4302. Incest**

* * *

**(b) Incest of a minor.--**A person is guilty of incest of a minor, a felony of the second degree, if that person knowingly marries, cohabits with or has sexual intercourse with a complainant who is an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood and:

(1) is under the age of 13 years[.]

18 Pa.C.S.A. § 4302(b).

**§ 6301. Corruption of minors**

**(a) Offense defined.--**

(1) .... (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a)(ii).

**§ 3126. Indecent assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

* * *

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3126(a)(7).

Regarding the filing of criminal charges, the Pennsylvania Rules of Criminal Procedure provide, in relevant part:

**Rule 560. Information: Filing, Contents, Function**

* * *

(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

* * *

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient[.]

Pa.R.Crim.P. 560.

Regarding the dates of offenses, this Court has further explained:

It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty." *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa.Super. 2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, 567 Pa. 24, 784 A.2d 776 (2001).

However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. *Commonwealth v. Devlin*, 460 Pa. 508, 515-516, 333 A.2d 888, 892 (1975)[.] ... Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

*Commonwealth v. Koehler*, 914 A.2d 427, 436 (Pa.Super. 2006). Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa.Super. 2007) (quoting *Commonwealth v. Groff*, [548 A.2d 1237, 1242

- 14 -

(Pa.Super.] 1988)).  This is especially true when the case involves sexual offenses against a child victim.  *Id.*

*Commonwealth v. Riggle*, 119 A.3d 1058, 1069-70 (Pa.Super. 2015).

In *Riggle, supra*, the charges related to offenses that occurred over a period of eight months.  *See id.* at 1061, 1070.  The defendant argued that he could not defend against the charges as the dates of the offenses set forth in the indictment were too vague.  *Id.* at 1069.  This Court affirmed the judgment of sentence, deciding that the period described was not too vague where the victim had testified to an ongoing pattern of sexual abuse that occurred over that time.  *Id.* at 1070.

Similarly, in *G.D.M., Sr., supra*, this Court considered a case which involved ongoing, repeated abuse of a six-year-old child over the course of seven months.  Concluding that the dates of the incidents were proven with sufficient specificity to satisfy due process, this Court observed:

> Under these circumstances, we find that the due process concerns of *Devlin* are satisfied where the victim, as here, can at least fix the times when an ongoing course of molestation commenced and when it ceased.  A six-year-old child cannot be expected to remember each and every date upon which he was victimized, especially where those events are numerous and occur over an extended period of time.  Unlike adults, the lives of children, especially pre-school children or those who have only started school, do not revolve around the calendar, except to the extent that they may be aware of their birthday or Christmas, or the day a favorite television show airs.  To require young children to provide such detail would be to give child predators free rein.  Instantly, we find that the dates of the incidents were proven with sufficient specificity to satisfy due process.

- 15 -

*Id.* at 990. *See also Commonwealth v. Prisk*, 13 A.3d 526 (Pa.Super. 2011) (affirming judgment of sentence for defendant charged with 314 offenses and sentenced to term of 663 to 1,500 years' incarceration related to ongoing sexual and physical abuse of his minor stepdaughter).

Instantly, the trial court explained:

> This court recognizes that the sheer number of charges in no way alleviates the Commonwealth of its burden of proof as to each particular charge.
>
> The criminal informations indicate a time frame of January 1, 2011, through June 2, 2017, a period of more than 2300 days. The victim testified to the incidents occurring from the time she was in preschool and continued routinely and on a daily basis (and sometimes multiple times on the same day) until she was 12½ years old.
>
> The evidence supported the notion that the child victim in this case was subject to almost daily sexual abuse at the hands of her father. Rule 560(b)(3) provides for a scenario where criminal activity occurred over a lengthy period of time. Specifically, pursuant to Pa.R.Crim.P. 560(b)(3), "....if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient." Pa.R.Crim.P. 560(b)(3).

(Trial Court Opinion, filed 10/24/23, at 4) (some citations omitted). The court further noted that the Commonwealth had presented the testimony of M.P. along with other evidence, stating:

> In a review of the transcript and by way of example we would look at the testimony of the victim. When asked how she was so certain that these events had occurred each and every day she responded as follows[:] "[h]ow do you know you brush your teeth everyday? It becomes a routine."

- 16 -

It was this type of testimony that established that [Appellant] continuously engaged in sexual assault of a child, who was a member of his household and less than age 13. This occurred over the course of approximately six and a half years and there was no question that the victim resided in the home of [Appellant] throughout that period of time.

When asked specifically if sexual assault occurred on a daily basis, the victim recalled that on certain Easter Sundays her mother would take her to Jumonville, a local religious landmark outside of Greene County. It would appear from her testimony that she was able to more specifically identify certain dates in which rapes and assaults DID NOT occur.

The days that it did not occur are the days she best recalled. For example, she indicated that the sexual assaults did not occur on her birthday because of annual birthday plans and family presence. Days that abuse did not occur were the exception not the rule.

(*Id.* at 5-7) (emphasis in original).

The record supports the trial court's conclusions. M.P. testified that the abuse occurred almost daily, with the exception of certain holidays, and at times occurred multiple times a day. The jury was free to credit this testimony, as well as the testimony of other witnesses, in addition to the forensic medical examination evidence. The evidence established that M.P. was a minor child under the age of 13 during these assaults, and that Appellant was her biological father. Pursuant to Rule 560(b)(3) and cases interpreting that rule, due process is satisfied where the child complainant can affix certain dates to the ongoing molestation, as M.P. did here. *See Riggle, supra*. *See also G.D.M., Sr., supra*. Although M.P. could not specify on which days Appellant raped her, forced her to perform oral sex, or digitally

- 17 -

penetrated her, this Court has held that "to require young children to provide such detail would be to give predators free rein." **See id.** On this record, the evidence was sufficient to support Appellant's convictions for the aforementioned charges.

In Appellant's second issue, he argues that the verdict was against the weight of the evidence. Appellant claims that the evidence was vague and ambiguous and could not support all charges. According to Appellant, the primary witness indicated there were occasions when Appellant did not assault her, and that fact alone rendered the calculation of charges erroneous. Appellant further contends that the vagueness of the allegations prohibited Appellant from mounting a reasonable defense, as he could not know a timeframe for the crime alleged to investigate even an alibi offense. As a result of these failings, Appellant concludes that the verdict was contrary to the weight of the evidence. We disagree.

> Our standard of review regarding challenges to the weight of the evidence is as follows:
>
> > The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the .... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> **Commonwealth v. Small**, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather,

- 18 -

appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted). Moreover, "[a] verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder." *Commonwealth v. Morales*, 625 Pa. 146, 164, 91 A.3d 80, 91 (2014) (citing *Commonwealth v. Tharp*, 574 Pa. 202, 218, 830 A.2d 519, 528 (2003)).

Instantly, the court explained that the jury heard witness testimony, observed witness demeanor, judged witness credibility, received appropriate instructions, and chose to believe the Commonwealth by returning a unanimous verdict of guilty. (*See* Trial Court Opinion, filed 10/24/23, at 7). The court concluded that nothing suggested the jury verdict was so contrary to the weight of the evidence that it would shock one's sense of justice, and accordingly, Appellant was not entitled to a new trial. (*See id.*)

We agree. As noted, M.P. testified that Appellant abused her on a near-daily basis and at times multiple times a day; the jury credited this testimony. Further, although there was testimony that M.P. had at times denied the abuse, Mrs. Perry testified that her own statement that M.P. had denied the abuse was a lie. Ms. Ewart also testified that although M.P. initially denied the abuse, she later disclosed it, and that initial denials were not uncommon. On this record, we cannot say that the court abused its discretion in ruling on

- 19 -

Appellant's weight claim, and Appellant is not entitled to relief on this issue. ***See Champney, supra***.

In Appellant's third issue, he argues that the trial court erred in permitting the jury to hear the forensic interview with M.P. pursuant to the tender years exception to the hearsay rule. Appellant claims that M.P. was not spontaneous or consistent in her recounting of events and he asserts that she initially denied that any abuse had occurred at all. Further, Appellant contends that the Commonwealth's petition seeking to admit this evidence was defective as it failed to state whether the victim intended to testify. Appellant complains that he was unfairly prejudiced by the admission of the forensic interview. Appellant concludes this Court should vacate the judgment of sentence on these grounds and award a new trial.[8] We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the

---

[8] Additionally, Appellant maintains that the Commonwealth failed to provide timely notice of its intent to utilize the tender years exception, and that the Commonwealth's notice was filed less than ten days prior to trial, with the hearing occurring the following day. Nevertheless, Appellant failed to preserve this particular claim in his Rule 1925(b) statement, so it is waived. ***See Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998) (stating that failure to raise issue in Rule 1925(b) statement constitutes waiver on appeal).

exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay testimony is inadmissible at trial. *See* Pa.R.E. 802. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Kriner*, 915 A.2d 653, 657 (Pa.Super. 2007) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super. 2002)) (internal quotation marks omitted). This exception to the hearsay rule provides:

**§ 5985.1. Admissibility of certain statements**

**(a) General rule.—**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

(2) The following offenses under 18 Pa.C.S. (relating to crimes and offenses) shall apply to paragraph (1):

\* \* \*

Chapter 31 (relating to sexual offenses)

\* \* \*

42 Pa.C.S.A. § 5985.1.

"Any statement admitted under the [tender years hearsay exception] must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." *Commonwealth v. O'Drain*, 829 A.2d 316, 320 (Pa.Super. 2003). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa.Super. 2003), *appeal denied*, 583 Pa. 695, 879 A.2d 782 (2005). Factors the court may consider when determining reliability include, but are not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Commonwealth v. Delbridge*, 578 Pa. 641, 675, 855 A.2d 27, 47 (2003).

Instantly, the court noted that it had reviewed and denied the admission of two interviews that the Commonwealth sought to introduce. Nevertheless, the court decided that M.P.'s 2018 interview with Ms. Patterson-Watson was relevant, possessed the indicia of reliability, and was conducted very close to the alleged events.[9]

Appellant does not dispute that the interview was relevant or conducted very close to the alleged events. Rather, he argues solely that the interview did not possess the indicia of reliability. More specifically, Appellant complains that "the alleged victim in this matter was neither spontaneous nor consistent in her recounting of events. Rather, she initially denied that any abuse occurred at all." (Appellant's Brief at 35-36).

Contrary to Appellant's assertions, the fact that M.P. may have initially denied to Ms. Ewart that the abuse occurred does not necessarily render the interview unreliable. Here, the video clearly depicts M.P.'s demeanor change from open, cheerful, and chatty when discussing school, her mother, and things she enjoyed doing, to reticence and humiliation when questioned about the abuse. (**See** Commonwealth's Ex. 1, at 12:08). Initially, M.P. requested that she not talk about the abuse because she was not comfortable doing so. (**See id.** at 15:08). Ultimately, however, M.P. described in blunt detail Appellant's rapes, as well as forced oral sex or, in her words, "blow jobs." (**Id.** at 17:30 – 29:20, 34:28 – 35:58). M.P. also stated that Appellant told her

---

[9] The forensic interview was included as a trial exhibit in the certified record for this Court's review.

that people in jail would kill him because he had touched a little girl. (**Id.** at 14:27). Further, towards the end of the interview, Ms. Patterson-Watson asked M.P. what she was drawing during the interview. M.P. responded that she was drawing Appellant in jail. (**See id.** at 33:25-28).

Significantly, Appellant has not pointed to any fact beyond M.P.'s initial denial that would render the interview unreliable. Rather, the interview showed that M.P. was consistent, open, and blunt regarding her statements about what Appellant had done to her. **See Delbridge, supra**. On this record, we cannot say that the court erred in admitting the interview. **See LeClair, supra**.

In Appellant's final issue, he argues that the court abused its sentencing discretion when it imposed consecutive sentences which resulted in an aggregate term of 1,500 to 3,000 years' incarceration, a sentence he asserts is well outside the fundamental norms of the sentencing process. As presented, Appellant's issue challenges the discretionary aspects of sentencing. **See Commonwealth v. Lutes**, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." **Commonwealth v. Perzel**, 291 A.3d 38, 46 (Pa.Super. 2023), *appeal denied*, ____ Pa. ____, 301 A.3d 426 (2023). Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four part analysis to determine: (1) whether

appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Troell***, 290 A.3d 296, 299 (Pa.Super. 2023) (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010)).

Bald claims of excessiveness based upon the imposition of consecutive sentences do not raise substantial questions for our review. ***Caldwell, supra***

at 769. Rather, the decision to impose consecutive rather than concurrent sentences lies within the sound discretion of the trial court, and does not raise a substantial question unless the sentence is so "manifestly excessive in extreme circumstances that it may create a substantial question." *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa.Super. 2014), *appeal denied*, 632 Pa. 671, 117 A.3d 297 (2015) (citation omitted). In such cases, we have focused on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case." *See id.* at 133-34.

Additionally, this Court has observed that:

A Rule 2119(f) statement that simply "contains incantations of statutory provisions and pronouncements of conclusions of law" is inadequate.

Rather, only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa.Super. 2005) (quoting *Mouzon, supra*).

Instantly, Appellant's Rule 2119(f) statement states solely "that the trial court's excessive sentence (1500 to 3000 years) is well outside the fundamental norms of the sentencing process." (Appellant's Brief at 38). His

statement does not articulate the reasons why the sentence raises doubts as to whether the court properly considered the sentencing guidelines or specify the provision or fundamental norm of the Sentencing Code violated. Notably, Appellant fails to set forth in his statement any of the more specific sentencing challenges presented in the argument section of his brief. As presented, Appellant's Rule 2119(f) statement fails to set forth a substantial question for our review. *See Zirkle, supra*. *See also Commonwealth v. Weimer*, No. 1461 WDA 2018 (Pa.Super. filed Apr. 27, 2020) (unpublished memorandum) (explaining that inadequate Pa.R.A.P. 2119(f) statement failed to raise substantial question).[10]

Moreover, even if Appellant had properly preserved his sentencing issue in his Rule 2119(f) statement, he would not be entitled to relief.[11] In his argument section, Appellant contends that the court focused solely on the severity of the crimes despite the fact that he suffered from documented mental health issues and had been determined to be incompetent on two separate occasions. As a result, Appellant argues that his sentence was

_____

[10] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[11] Appellant's arguments regarding the Eighth Amendment and the proportionality of his sentence are waived for failure to preserve them in his Rule 1925(b) statement. *See Lord, supra*. While claims regarding the legality of a sentence cannot be waived, Appellant's argument is presented as a discretionary sentencing claim and does not contend that his sentence is illegal but that the court abused its discretion by sentencing him to 1,500 to 3,000 years' incarceration. *See Commonwealth v. Succi*, 173 A.3d 269, 284-85 (observing that alleged Eighth Amendment violation does not necessarily constitute challenge to legality of sentence).

excessive and that the trial court failed to consider his individual circumstances and mitigating factors.

"[S]entencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion." ***Commonwealth v. Schroat***, 272 A.3d 523, 527 (Pa.Super 2022). "In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Id.*** at 527-28. Additionally, "long standing precedent ... recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa.Super. 2005). ***See also*** 42 Pa.C.S.A. § 9721. A trial court does not abuse this discretion unless the sentence is "grossly disparate" to the conduct at issue, or "viscerally appear[s] as patently unreasonable." ***Commonwealth v. Gonzalez–Dejusus***, 994 A.2d 595, 599 (Pa.Super. 2010).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "a court is

required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Id.*** Moreover, where the sentencing court had the benefit of a [pre-sentence investigation ("PSI") report], the law presumes the court was aware of and weighed relevant information regarding a defendant's character along with mitigating statutory factors. ***Commonwealth v. Tirado***, 870 A.2d 362, 366 n.6 (Pa.Super. 2005).

Instantly, the trial court noted that it considered Appellant's PSI report prior to imposing sentence. (***See*** N.T. Sentencing, 103/28/23, at 9-11). The PSI was admitted into the record in court, and the parties discussed Appellant's additional sentence related to the rape of another child. (***See id.*** at 10). The parties also discussed the fact that the PSI contained a forensic summary of Appellant's mental health. (***Id.*** at 12-13). Following the imposition of sentence, the court stated:

> The [c]ourt recognizes this to be an obviously lengthy sentence which can never be served in the natural life of the [d]efendant. We also recognize that due process requires the [c]ourt to consider all factors, and that an abuse of discretion would potentially lead to re-sentencing in the matter. However, given the context of the case, the she[e]r number of charges and the severity of each separate count, we have applied the appropriate sentencing guidelines and believe that although the sentence is incredibly lengthy, that is consistent with due process and not an abuse of

discretion.

(N.T. Sentencing, 3/28/23, at 18). The court further noted Appellant's history of mental health issues and findings of incompetency and directed that Appellant's mental health records be provided to the state correctional facility. (*See id.* at 19).

In its Pa.R.A.P. 1925(a) opinion, the court elaborated as follows:

> The [c]ourt in [*Prisk, supra*], after a jury trial, sentenced the [d]efendant to 633 to 1,500 years imprisonment for 314 offenses; the charges included those of rape, involuntary deviate sexual intercourse, and indecent assault, and the Superior Court found that the sentence was NOT excessive.
>
> *Prisk*, reasoned that the sentence was not excessive on the 314 separate offenses, "[t]hese offenses stemmed from [the appellant's] systematic sexual abuse of his stepdaughter, which occurred on an almost daily basis over the course of six years .... Appellant was not entitled to a 'volume discount' for his multiple offenses." [*Prisk, supra* at 533.]
>
> The [c]ourt finds for numerous reasons expressed by this [c]ourt, throughout the various Orders and herein, that the total sentence of not less than 1,500, nor more than 3,000 years is not excessive and was a proper sentence for the criminal conduct of [Appellant].
>
> The [c]ourt considered all relevant sentencing factors and the sentence was within the standard range, and given the fact that [Appellant] was convicted of more than 2,000 counts of sexually assaultive behavior with his daughter, a child less than 13 years of age, the sentence imposed was constitutional and wholly appropriate.
>
> In rendering this sentence, after fair consideration of all relevant factors the sentence as imposed was within the sound discretion of the [c]ourt and not an abuse of discretion. [The court] carefully considered the record and any mitigating or aggravating factors. Therefore, the

[c]ourt did not err when it sentenced [Appellant] to the total sentence imposed herein.

(Trial Court Opinion, 10/24/23, at 14).

The record belies Appellant's claim that the court failed to consider his mental health or any other mitigating factors. Rather, the court's explanation of its sentence demonstrates that it carefully considered and weighed the sentencing factors, and the mitigating and aggravating factors in this case, with the benefit of a PSI report. *See* 42 Pa.C.S.A. § 9721(b); ***Tirado, supra***; ***Griffin, supra***. The court ultimately determined that the gravity of the offenses, protection of the public, and the aggravating factors in this case warranted the sentence as imposed. We agree with the trial court that the sentence, as delivered, was not an abuse of discretion where Appellant participated in the years-long daily rape and sexual assault of his minor, biological daughter. ***See Prisk, supra***; ***Marts, supra***. On appeal, Appellant essentially asks this Court to reweigh the sentencing factors in his favor. We decline to do so. ***See Schroat, supra***. Thus, even if Appellant had properly preserved his sentencing challenge, it would merit no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025

- 31 -